# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUANG VINH DUONG,<br><br>　　　　Petitioner,<br><br>　v.<br><br>MARCOS CHARLES, *Warden, California City Correctional Facility*, et al.,<br><br>　　　　Respondents._____/ | Case No. 1:25-cv-01375-SKO<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>(Docs. 1, 2) |

Pending before the Court is Petitioner Quang Vinh Duong's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1). The undersigned has reviewed the petition and supporting documentation and determines that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g).[1] For the reasons detailed below, the Court GRANTS the Petition for Writ of Habeas Corpus, DENIES AS MOOT the Motion for Temporary Restraining Order, and ORDERS Petitioner's immediate release from custody.

## I. BACKGROUND

Petitioner is a citizen of Vietnam who came with his family to the United States as a refugee or humanitarian parolee in 1992. (Doc. 1 at 4). He then became a lawful permanent resident (a "green card" holder). (*Id.* at 5). In 1997, he pleaded nolo contendere to one count of

---

[1] Both parties consented to magistrate judge jurisdiction. (*See* Docs. 5, 10). Accordingly, this case was reassigned to the undersigned for all future proceedings, including final adjudication of Petitioner's petition, as of October 20, 2025. (*See* Doc. 11).

assault with a deadly weapon under California Penal Code § 245.  (Doc. 1-4 ("Duong Decl.") at 2).  While Duong was originally charged as an adult, his case was later transferred to juvenile court where he was sentenced to a term of detention by the California Youth Authority.  (*Id.*).  Duong represents that he was not advised of any collateral immigration consequences of his plea prior to pleading nolo contendere.  (*Id.*).

In 2002, after being released from the California Youth Authority at age 21, he was ordered removed by an immigration judge, spending several months in detention while Immigration and Customs Enforcement ("ICE") attempted to remove him.  (*Id.* at 6–7).  When Vietnam failed to issue him a travel document, he was released on supervision in 2002.  (*Id.* at 7).  He complied with all check-in appointments and appeared yearly in person to renew his Employment Authorization Document.  (*Id.* at 7).  In late 2009, Duong was arrested and later pleaded no contest to two charges in a California state court: (1) cultivation of marijuana and (2) theft of utility services (for bypassing an electrical meter).  (*Id.* at 8).  Duong represents that these charges stemmed from a "failed small-scale marijuana grow venture during a period of economic hardship."  (*Id.*).  Duong represents that he was again not advised of any collateral immigration consequences that may be implicated by his plea.  (*Id.* at 9).  Upon release from state custody, he was not detained by ICE as Vietnam continued to maintain its policy of not accepting those who had emigrated prior to 1995.  (*See* Doc. 1 at 9).

Duong remained under an order of supervision and did not commit any crimes for the next 16 years.  (*Id.*).  Still, on July 1, 2025, ICE arrested him at his residence while he was watering his garden.  (*Id.* at 11).  At the time of his detention, the Government represents that Duong was provided with a Notice of Revocation of Release (the "Notice"), which stated the following:

> This letter is to inform you that your case has been reviewed, and it has been determined that you will be kept in the custody of [ICE] at this time.  This decision has been made based on a review of your file.  ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case. . . .  Based on the above, and pursuant to 8 C.F.R. § 241.4, you are to remain in ICE custody at this time.  You will promptly be afforded an informal interview at which time you will be given an opportunity to respond to the reasons for the revocation.

(Doc. 14-1 at 35).

Duong currently remains in ICE custody.

On October 15, 2025, Petitioner sought his release though a writ of habeas corpus on five grounds: (1) that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and 8 U.S.C. § 1231; (2) that his detention violates his due process rights under the Fifth Amendment; (3) that removal is improper while he has pending motions to reopen in front of an immigration judge and the Board of Immigration Appeals; (4) that ICE may unlawfully seek to remove him to a third country without notice and an opportunity to be heard; and (5) that ICE may unlawfully seek to remove him to Vietnam without considering his plausible fear of persecution and torture. (Doc. 1, at 14–21). On October 14, 2025, the Government indicated that it had secured travel documents for Petitioner's removal to Vietnam. (Doc. 14).

The Court will start and end its review with Petitioner's due process claim.

## II.     DISCUSSION

### A.     Jurisdiction

Before turning to the merits, the Court must first assure itself of jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999). Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3). In doing so, we carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial." *Zadvydas*, 533 U.S. at 699. But the Supreme Court has consistently "rejected" any suggestion that section 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). Had Petitioner sought to challenge the Government's decision to execute his removal order, it would indeed bar this Court's review. But because, Petitioner's due process claim contests only his detention resulting from violations of the Government's mandatory duties under certain statutes, regulations, and the Constitution, the Court finds that it has jurisdiction to determine the lawfulness of Petitioner's detention. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [section 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

1 **B.  Due Process**

2  Upon review, the Court finds that the Government has, in three ways, violated its own regulation, 8 C.F.R. § 241.13.  Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." (*See* Docs. 1 at 7; 14-1 at 35).

 First, to revoke a removable alien's release under section 241.13(i)(2), ICE must determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances."[2]  § 241.13(i)(2).  The Government asserts that it has assessed that changed circumstances will result in Petitioner's removal to Vietnam in the reasonably foreseeable future.  (*See* Doc. 12 at 3).  "While that may certainly be the case now, § 241.13(i)(2) requires that this determination is made *before* the removable alien has had his release revoked." *Tran v. Noem*, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (emphasis added); *see also Sphabmixay v. Noem*, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025); *Phakeokoth, v. Noem*, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025); *Nguyen, v. Noem*, No. 25CV2792-LL-VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("However, courts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.. . . . This is so even when [] the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment." (quoting *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025)).  And, here, the record does not show that a changed-circumstances determination was made *at or before* Petitioner's re-detention on July 1, 2025.  Instead, the record shows that the Government did not even submit a

---

[2] The Court notes that section 241.13(i)(1) provides another avenue for the Government to revoke release under section 241.13 in instances where an alien "violates the conditions of release."  But nowhere in the record does the Government purport to rely on this authority for the July 1, 2025 revocation of Petitioner's release, so the Court will not address this provision.

4

request to Vietnam for travel documents until July 30, 2025—*almost a month after* re-detaining Petitioner. (Doc. 14 at 3). And, to the extent that the Government advances an argument that this kind of determination may be supported by evidence showing a general change in a country's policy of accepting removable aliens on a case-by-case basis, such arguments have been repeatedly rejected. *See, e.g.*, *Phan v. Beccerra*, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) ("Respondents contention that Petitioner's removal is reasonably foreseeable because removals to Vietnam are in fact occurring is unpersuasive" where "[p]re-1995 Vietnamese immigrants may be repatriated to Vietnam on 'a case-by-case basis'" and Vietnam has "discretion whether to issue a travel document to any individual." (quoting *Hoi Thanh Duong v. Tate*, No. 24-cv-04119-H, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025))). Therefore, the Court concludes based on this record that if ICE assessed a likelihood of Petitioner's removal before revoking his release, it could not have been "*on account of*" legally relevant changed circumstances pursuant to section 241.13(i)(2). With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Court finds the Government has violated section 241.13(i)(2). *See, e.g.*, *Sphabmixay*, 2025 WL 3034071, at *2 (finding the same).

Second, even if the Government had made a determination based on legally sufficient "changed circumstances," the Court finds the Government also violated the section 241.13(i)(3)'s notice requirement. Section 241.13(i)(3) sets forth "revocation procedures" governing revocation carried out pursuant to this section. To revoke a removable alien's release under section 241.13(i)(3), an alien must "be notified of the reasons for revocation of his or her release" and those reasons must be "stated in the [written] notification." 8 C.F.R. § 241.13(i)(3); *see Tran*, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release").

Based on the record before the Court, ICE represents that it provided sufficient written notice to Petitioner on the day of his arrest.[3] (*See* Docs. 14 at 3; 14-1 at 35–36). That Notice states the Government made "a determination that there is a significant likelihood of removal in

---

[3] However, the Court observes that the Notice does not bear Petitioner's signature confirming receipt.

the reasonably foreseeable future" and that Petitioner is to remain in ICE custody "pursuant to 8 C.F.R. § 241.4." (Doc. 14-1 at 35–36). This notice fails to comport with the requirements of section 241.13 in several ways.

One, "[s]imply [stating] that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." *Phakeokoth*, 2025 WL 3124341, at *4 (quoting *Sarail A. v. Bondi*, 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *10 (D. Minn. 2025)). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Id.* (quoting *Sarail A.*, 2025 WL 2533673, at *10). The Notice the Government purports to have provided Petitioner provides neither the what nor the why. (*See* Doc. 14-1 at 35–36).

Two, the Notice cites the wrong authority, an error the Government compounds in its filings in this Court, which further undermines any argument that the Notice was sufficient to allow petitioner to "meaningfully respond at [any] post-detention informal interview" as required by section 241.13(i)(3). *Diaz v. Wofford*, Case No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025).

To start, the Notice puzzlingly does not cite section 241.13. Instead, it cites to section 241.4, which provides for the discretionary authority to revoke release

> when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

§ 241.4(l). Yet, despite invoking authority to revoke under section 241.1, the Notice does not invoke any of the circumstances authorizing revocation of release that are enumerated in that section. (*See* Doc. 14-1 at 35–36). Instead, the Notice's basis for revocation was a "determination that there is significant likelihood of removal in the reasonably foreseeable future," (*id.*)— language clearly mirroring the language of section 241.13, not 241.1. And as the regulations themselves makes clear, Petitioner's revocation of release is indeed governed by section 241.13,

not section 241.1. *See* § 241.13(b)(1) ("[s]ection 241.4 shall continue to govern the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, *unless* the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future."). Simply put, the Notice cited the wrong authority to justify revoking Petitioner's release.[4]

And the Government's erroneous invocations of authority continue—this time, even more confoundingly. The Government, in its opposition to the petition, now states that Petitioner was detained "for expedited removal." (Doc. 12 at 2). But expedited removal is governed by 8 U.S.C. § 1225(b)(1)(A)(iii)(II) and 8 C.F.R. § 235.3, which are (1) not cited in the Notice and (2) are plainly inapplicable to Petitioner, as Petitioner has been paroled into the United States on several occasions and has been under an order of supervision for the better part of two decades, (*see* Doc. 1 at 5–7, 9); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *4 (E.D. Cal. Sept. 5, 2025) (adopting the interpretation of 8 U.S.C. § 1225(b)(1)(A)(iii)(II) as set forth in *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *22 (D.D.C. Aug. 1, 2025), that expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II) is not available is a noncitizen was ever paroled into the United States).

In sum, ICE's conclusory, conflicting, and legally inapplicable explanations for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at [any] post-detention informal interview," as required under section 241.13. *Diaz*, 2025 WL 2581575, at *8 (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.")); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No.: 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition because "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons").

---

[4] Even assuming one could read the Notice as invoking section 241.13 rather than 241.1, the bare-bones explanation included in the Notice does not satisfy the "the due-process notification requirement of § 241.13(i)(3)." *See Tran*, 2025 WL 3005347, at *3 (finding the same).

Finally, even if the Court found the Government had made a legally sufficient determination of "changed circumstances" and that the Notice was sufficient under section 241.13(i)(3), the Court finds the Government also violated section 241.13(i)(3)'s opportunity to be heard requirement. In addition to the notice provision, section 241.13(i)(3) requires ICE to "promptly," after re-detainment, conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." Petitioner argues that after detention he was not provided "a meaningful opportunity to contest the grounds for his continued detention," (Doc. 1 at 13), and the Government provides no evidence to the contrary that Petitioner was promptly provided an informal interview as required by section 241.13(i)(3). The Court, therefore, again finds the Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3). *See Tran*, 2025 WL 3005347, at *3 (finding the same); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

The Government does not seem to dispute that it has failed to follow its own rules for re-detainment. In fact, the Government does not engage at all with Petitioner's argument that his due process rights were violated by the Government failing to abide by section 241.13's requirements. And instead of clarifying the record as to what authority entitled the Government to revoke Petitioner's release, the Government's opposition to the petition obscures far more than it illuminates.

Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). This is so even when, as here, the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment. *See id.* at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin);

*Tran*, 2025 WL 3005347, at *1–4 (same); *Sphabmixay*, 2025 WL 3034071, at *3; *Phakeokoth*, 2025 WL 3124341, at *5 ("Respondents also fail to specify whether ICE requested travel documents for Petitioner before or after his arrest. Thus, ICE's revocation of Petitioner's release does not appear to have been 'on account of' changed circumstances."). This Court will follow suit.

Because the Government was required to, but failed to comply with, section 241.13(i) when it revoked Petitioner's supervised release on July 1, 2025, issuing a writ to reinstate that release is warranted. This will be "without prejudice" to the remedies that the Government may otherwise have, namely their readiness to deport Petitioner to Vietnam in the coming weeks. *See Tran*, 2025 WL 3005347, at *3. Given Petitioner's "apparently unblemished record" the last 16 years and his nearly four and a half months of unlawful detention, "Respondents may exercise their discretion to allow him to say goodbye to his family, settle his affairs, and report for his removal." *See id.*

### III.   CONCLUSION

Accordingly, the Court GRANTS the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and DENIES AS MOOT the Motion for Temporary Restraining Order. The Government SHALL immediately release Petitioner from custody on the July 1, 2025, revocation of release and arrest. Petitioner shall comply with all conditions that were in effect before his July 1, 2025, re-detainment. By November 15, 2025, at 12:00 p.m., the parties must also file a joint status report to confirm that Petitioner has been released, after which the Clerk will close this case.

IT IS SO ORDERED.

Dated:   **November 14, 2025**                    /s/ *Sheila K. Oberto*
                                                  UNITED STATES MAGISTRATE JUDGE